UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CATHERINE RENEA WOODFELL,

      Plaintiff,

v.                           Civil Action No. 2:19-cv-00658

GATEWAY MORTGAGE GROUP, LLC,

      Defendant.

MEMORANDUM OPINION AND ORDER

      Pending is plaintiff's motion to remand, filed October 7, 2019.

I.    Background

      This civil action was originally filed in the Circuit Court of Kanawha County, West Virginia on July 30, 2019 by plaintiff Catherine Renea Woodfell.  The complaint alleges that on June 19, 2012, plaintiff secured a 30-year mortgage loan from defendant Gateway Mortgage Group, LLC for the principal amount of $62,349.00 with a 4.25% interest rate.  Compl. ¶ 4.  She used the loan to purchase a home in Elkview, West Virginia, where she still resides today.  Id. ¶¶ 2, 4.  The Federal Housing Administration ("FHA") insured the loan under the "Single Family Housing Program," which provides mortgage insurance and other incentives to encourage lenders to finance affordable loans to

lower income borrowers.  Id. ¶ 6(a)-(b).  The FHA-backed loan
provides special benefits, including loss mitigation provisions
that require the lender or servicer to take alternative steps to
avoid foreclosure in the event the borrower struggles to make
payments.  Id. ¶¶ 6-7.  The parties allegedly incorporated these
provisions in the "Deed of Trust" and mortgage "Note" agreement.
Id. ¶ 7(a).

    Plaintiff apparently made regular payments on the
mortgage loan until November 2018, when she fell behind three
months on her payments after losing a job in September 2018.
Compl. ¶¶ 9-11.  In a letter dated December 2, 2018, defendant
allegedly invited plaintiff to apply for assistance, but instead
of following the contract's requirement to cease foreclosure
activity while the application was pending, the letter noted
that "[u]ntil you are approved for an assistance program and all
parties have executed the appropriate agreement and any other
required documents, collection and/or foreclosure efforts will
continue on your loan."  Id. ¶ 12.  Plaintiff faxed her
application on December 18, 2019 and submitted additional
supporting materials on January 2, 2019.  Id. ¶¶ 13-14.  After
receiving a letter from defendant on January 4, 2019 noting that
it was closing plaintiff's loss mitigation review because of

missing documentation, plaintiff resubmitted her application
that same day.  Id. ¶¶ 15–16.

Defendant subsequently informed plaintiff that her
application was complete.  Compl. ¶ 19.  Yet, in a March 1, 2019
letter defendant denied the request for assistance, noting that
plaintiff had received a prior modification under the FHA's Home
Affordable Modification Program ("HAMP")[1] "within the last 24
months & property damage."  Id. ¶ 20(a).  Plaintiff acknowledges
that the FHA Single Family Housing Policy Handbook ("Handbook")
limits eligibility for FHA-HAMP if a modification was made
within the last 24 months.  Id. ¶ 20(d).  The parties' last
modification agreement is dated April 26, 2017.  Id. ¶ 20(c).
However, the Handbook also provides that a borrower must make
three trial monthly payments prior to receiving a modification.
Id. ¶ 20(d).  Plaintiff reasons that had defendant provided
plaintiff a trial payment plan on March 1, 2019, she would have
been eligible for an FHA-HAMP modification.  Id. ¶ 20(e).

Nevertheless, during a March 11, 2019 phone
conversation defendant instructed plaintiff to resubmit her
application, which she did as advised on March 13, 2019.  Compl.
¶¶ 22-23.  Defendant again requested additional documentation,

---

[1] See 12 U.S.C. § 5219a.

which plaintiff submitted via fax on April 1, 2019.  Id. ¶¶ 23–24.  Nonetheless, defendant closed plaintiff's application in a letter dated April 3, 2019 because it was "unable to complete a review due to missing documentation."  Id. ¶ 25(a).  After defendant referred plaintiff's loan to foreclosure on April 4, 2019, defendant contacted plaintiff on April 5, 2019 to request the additional documentation that plaintiff alleges she had already submitted on April 1, 2019 as well as new bank statements, which plaintiff submitted on April 9, 2019.  Id. ¶¶27- 28.  Despite these efforts, defendant's letter of April 16, 2019 notified plaintiff that "foreclosure proceedings were underway."  Id. ¶ 29.  Plaintiff received another letter dated April 25, 2019, stating that her request for assistance was complete, but defendant's letter of May 23, 2019 denied her application again because of "Prior Mod/HAMP within the last 24 months" even though 24 months had passed since her previous modification.  Id. ¶¶ 30–31.

In addition to failing to comply with loss mitigation provisions, defendant "repeatedly informed Plaintiff that once an account was 80 days past due, Gateway would not accept any payment of less than the full amount owed."  Compl. ¶ 33.  Plaintiff alleges that this policy was inconsistent with the Handbook, which allows servicers to return a partial payment "if

the loan is in default <u>and</u> the payment represents less than half the full amount due." <u>Id.</u> ¶ 36.  Plaintiff attempted to send $1,700.00 in payment during a January 10, 2019 phone call, but defendant instructed plaintiff not to make payment because it was less than the full amount due at the time, approximately $2,215.88.  <u>Id.</u> ¶36.  On April 18, 2019, plaintiff sent a check for $2,769.85, allegedly the full amount owed by that date.  <u>Id.</u> ¶ 37.  Yet, defendant returned the check "because it was not enough to reinstate her loan."  <u>Id.</u>[2]

Finally, the complaint alleges that the Handbook requires a servicer to perform a visual inspection of the property to determine the occupancy status of the home only if the loan is delinquent and the servicer could not otherwise reach the borrower by alternative method.  Compl. ¶¶ 38-42.  The servicer may only perform a visual inspection if it remains unable to confirm the occupancy status of the home after following up with the borrower by letter, telephone, or other communication.  <u>Id.</u>  Even after plaintiff communicated that she still resided in the home, defendant assessed a "Property Inspection Fee" on six occasions.  <u>Id.</u> ¶ 43-47.

---

[2] Although plaintiff alleges that $2,769.85 covered the five payments owed on the loan as of April 2019, defendant's response did not specify or confirm the required amount owed.  Compl. ¶ 37.

In total, plaintiff brings claims of misrepresentations in debt collection in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-2-127, including informing plaintiff that foreclosure efforts would continue until a loss mitigation agreement was approved and refusing to accept payment for less than the full amount due (Count I), unconscionable conduct in debt collection in violation of § 46A-2-128 (Count II), illegal debt collection in violation of § 46A-2-127(g) (Count III), and breach of contract for violating the Deed of Trust (Count IV). <u>See</u> Compl., Claims for Relief.  Plaintiff seeks statutory civil penalties, actual damages, punitive damages, attorney fees and costs, a declaration that defendant breached the contract, and other equitable relief, including a set-off for accrued arrears and specific performance of the contract.  <u>Id.</u>

Defendant, an Oklahoma corporation, was served a copy of the summons and complaint on August 13, 2019.  Not. Removal ¶¶ 3, 7; <u>id.</u>, Exs. A–B.  On September 12, 2019, defendant removed the case to this court based on diversity jurisdiction. In its removal papers, defendant alleges that the complaint's request for specific performance satisfies the amount in controversy requirement by itself, noting that the initial principal amount of the loan was $62,349.00 plus interest and as

of April 2017 the outstanding loan balance was over $55,000.00.
Not.  Id. ¶ 12; id., Ex. D.

Plaintiff moves to remand, arguing that the initial
principal balance of the loan is not an appropriate measure of
the amount in controversy.  See Pl.'s Mot. Remand 1.  Inasmuch
as plaintiff only requests undetermined values for statutory
damages, actual damages, punitive damages, and attorney fees,
plaintiff argues that defendant failed to demonstrate that the
amount in controversy exceeds $75,000 for purposes of diversity
jurisdiction under 28 U.S.C. §§ 1332, 1446.  Plaintiff also
requests attorney fees and costs under 28 U.S.C. § 1447(c).

## II.  Legal Standard

"Federal courts are courts of limited jurisdiction.
They possess only that power authorized by Constitution and
statute, which is not to be expanded by judicial decree."
Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377
(1994) (citations omitted).  "Because removal jurisdiction
raises significant federalism concerns, we must strictly
construe removal jurisdiction" and remand the case "[i]f federal
jurisdiction is doubtful."  Mulcahey v. Columbia Organic
Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).  "The burden of
demonstrating jurisdiction resides with 'the party seeking

removal.'" <u>Md. Stadium Auth. v. Ellerbe Becket Inc.</u>, 407 F.3d 255, 260 (4th Cir. 2005) (quoting <u>Mulcahey</u>, 29 F.3d at 151).

The court is vested with original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1); <u>Rosmer v. Pfizer Inc.</u>, 263 F.3d 110, 123 (4th Cir. 2001).  Our court of appeals has established that "the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" <u>Dixon v. Edwards</u>, 290 F.3d 699, 710 (4th Cir. 2002) (quoting <u>Gov't Emps. Ins. Co. v. Lally</u>, 327 F.2d 568, 569 (4th Cir. 1964)).

Ordinarily, courts ascertain the amount in controversy by reference to the sum demanded in the plaintiff's complaint. <u>JTH Tax, Inc. v. Frashier</u>, 624 F.3d 635, 638 (4th Cir. 2010) (citing <u>Wiggins v. N. Am. Equitable Life Assur. Co.</u>, 644 F.2d 1014, 1016 (4th Cir. 1981)).  However, "[i]f a complaint 'does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000].'" <u>Francis v. Allstate Ins. Co.</u>, 709 F.3d 362, 367 (4th Cir. 2013) (alteration in original) (quoting <u>De Aguilar v. Boeing Co.</u>, 11 F.3d 55, 58 (5th Cir. 1993)).  In evaluating whether a defendant meets this burden,

courts must consider the value of requests for declaratory or injunctive relief as they do requests for money damages.  <u>See id.</u>; <u>JTH Tax</u>, 624 F.3d at 639.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977); <u>See</u> <u>Francis</u>, 709 F.3d at 367.  This value is determined "by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant."  <u>JTH Tax</u>, 624 F.3d at 639.

### III. Discussion

In moving to remand, plaintiff argues that "[t]he principal balance of the loan is not an appropriate measure of damages because Plaintiff does not seek to be relieved from her contractual obligation to repay the mortgage loan debt."  Pl.'s Mem. Supp. Mot. Remand 9 ("Pl.'s Mem.").  Rather than seeking an order preventing defendant from recovering the mortgage loan and foreclosing on the property, the breach of contract claim seeks equitable and declaratory relief to require defendant to conduct a loss mitigation evaluation, per the contract.  <u>Id.</u>  In its response, defendant primarily argues that the "demand for specific performance — in lieu of foreclosure — subjects the value of her property to the satisfaction of the jurisdictional

amount in controversy requirement." Def.'s Resp. 1.  It
supports this proposition by relying on two unpublished opinions
from the Northern District of West Virginia: Raspet v.
Shellpoint Mortgage Servicing, A Division of New Penn Financial,
LLC, No. 1:18CV19, 2018 WL 1785565 (N.D.W. Va. Apr. 13, 2018)
and Hudak v. Selene Finance LP, No. 1:15CV20, 2015 WL 1539740
(N.D.W. Va. Apr. 7, 2015).  Defendant argues that in both cases,
the courts found that the pecuniary value of the home was the
amount in controversy even where the plaintiffs "sought to avoid
foreclosure sale by implicating specific loss mitigation
provisions of their respective mortgage contracts." Def.'s
Resp. 2.

          In Raspet, the court addressed whether the plaintiffs
"have placed the full value of their home at issue in this
litigation by seeking 'to rescind the needless foreclosure of
[their] home.'" 2018 WL 1785565, at *2.  According to the
Raspet plaintiffs, the relief sought was actually that the loan
servicer fulfill its obligation to engage in a loss mitigation
review, which would cost less than $75,000.  Id. at *3.  The
court rejected this argument and held that because the servicer
had already foreclosed on the home, the value of plaintiffs'
request to rescind the foreclosure of their home "'is no less
than the value of the home,' which is 'the object of the

litigation.'"  2018 WL 1785565, at *3 (quoting <u>Hudak</u>, 2015 WL 1539740, at *2)).

     <u>Raspet</u> distinguished its holding from several other cases where courts concluded that the balance of the mortgage loan did not satisfy the amount in controversy requirement even where the plaintiffs sought equitable relief relating to the mortgage loan.  <u>See</u> 2018 WL 1785565, at *4; <u>Addington v. LoanDepot.com, LLC</u>, No. 2:17-CV-104, 2017 WL 4685428, at *5 (N.D.W. Va. Oct. 18, 2017) (remanding case where "the object actually at issue in this litigation relates to the parties' rights and obligations under the FHA regulations incorporated into the contract" and whether the defendant met its pre-foreclosure obligations); <u>Stottlemire v. Caliber Home Loans, Inc.</u>, No. 1:16-CV-118, 2017 WL 282419, at *2 (N.D.W. Va. Jan. 20, 2017) ("Contrary to [mortgage servicer's] assertion, the value of this case is not measured by the worth of the Plaintiffs' home."); <u>Bohigian v. Flagstar Bank, FSB</u>, No. 1:11CV181, 2012 WL 112322, at *3 (N.D.W. Va. Jan. 12, 2012) (finding that defendant failed to allege that foreclosure was its "only avenue for enforcing its loan" or "how the 'pecuniary result'" of an injunction to enjoin defendant from taking possession or foreclosing on plaintiff's home "would equate to the entire outstanding balance of the loan").

Raspet explained that "[t]he common thread among these cases is that they were filed prior to any foreclosure sale and did not necessarily implicate the value of the property at issue in the litigation." 2018 WL 1785565, at *5. By contrast, Addington v. LoanDepot.com, LLC clarified that "[i]n cases where the court found that the full balance of the loan was the amount in controversy, the common thread was that foreclosure was the defendant's only avenue to collect on the debt." No. 2:17-CV-104, 2017 WL 4685428, at *5 (N.D.W. Va. Oct. 18, 2017) (citing cases). Following this precedent, Raspet denied the motion to remand because the equitable relief sought was a rescission of the foreclosure sale, and concluded that undoing the foreclosure was "not merely the 'ultimate strategic goal' of [the] litigation, Addington, No. 2:17-CV-104, 2017 WL 4685428, at *4, but rather is a necessary component of the relief in controversy." Raspet, 2018 WL 1785565, at *5.

In Hudak, the plaintiff mortgagors also argued that the "actual object" of its "specific performance claim is loss mitigation, not . . . some permanent injunction of foreclosure resulting in pecuniary loss to Defendant in the amount of the mortgage loan." 2015 WL 1539740, at *3. Yet, the plaintiffs there had previously filed for Chapter 7 bankruptcy, which "extinguished their personal obligation on the loan, but left

intact the lienholder's right to foreclose on the home." 2015
WL 1539740, at *1. Consequently, the servicer's only way to
recover the unpaid loan balance was by foreclosing on the
property. Id. at *2. Although the court concluded that the
"pecuniary value resulting from an award of specific performance
would be no less than the value of the home," the holding was
based on the plaintiffs no longer having an obligation on the
loan. 2015 WL 1539740, at *4.

Hudak's holding was consistent with courts in this
circuit that have distinguished between plaintiffs who remain
obligated on the mortgage loan and those whose liability was
previously discharged in bankruptcy. In Winnell v. HSBC
Mortgage Services, Inc., this court found that the value of the
requested injunction was the outstanding balance of the loan
because foreclosure was the mortgage servicer's "sole recourse
to enforce the loan" after the plaintiff's "personal liability
on the loan [was] alleged to have been discharged in
bankruptcy." No. 2:11-CV-00561, 2011 WL 5118805, at *2 (S.D.W.
Va. Oct. 28, 2011). See also Carter v. Nat'l City Mortg., Inc.,
No. 1:14CV70, 2014 WL 2862953, at *3 (N.D.W. Va. June 24, 2014)
(denying motion to remand where plaintiff's "liability on the
loan has been discharged through bankruptcy"). Whereas in
Bohigian v. Flagstar Bank, FSB, the court rejected comparisons

13

to <u>Winnell</u> because the defendant did not similarly allege that foreclosure was its only means of recovering on the mortgage loan.  No. 1:11CV181, 2012 WL 112322, at *3 (N.D.W. Va. Jan. 12, 2012).  Inasmuch as the defendant could "not otherwise demonstrate[] how the 'pecuniary result' it would suffer upon . . . an injunction" to enjoin the defendant from taking possession or foreclosing on the plaintiff's home "would equate to the entire outstanding balance of the loan," the court found the jurisdictional requirement lacking.  <u>Id.</u> (quoting <u>Dixon</u>, 290 F.3d at 710).  Unlike the plaintiffs in <u>Hudak</u> and <u>Winnell</u>, foreclosure here is not defendant's "sole recourse to enforce the loan" because plaintiff remains obligated on the loan.  <u>See Winnell</u>, 2011 WL 5118805, at *2; <u>Hudak</u>, 2015 WL 1539740, at *2; Pl.'s Reply 3.

     Moreover, unlike <u>Raspet</u>, plaintiff seeks an order compelling defendant to conduct a loss mitigation evaluation <u>before</u> pursuing a foreclosure sale on the home.  <u>See Raspet</u>, 2018 WL 1785565, at *3.  Regulations promulgated by the Department of Housing and Urban Development and incorporated into the parties' agreement provide that a loss mitigation evaluation would require defendant to pursue other alternatives prior to foreclosure.[3]  If the court ultimately grants

---

[3] These alternatives include deeds in lieu of foreclosure (24

plaintiff's request for specific performance, a loss mitigation evaluation could be expected to result in a loan modification or other alternatives that would avoid the prospect of foreclosure entirely.

"Our district and the Northern District of West Virginia have thoroughly examined the issue of whether the value of a home equates to the value of the litigation when a plaintiff seeks to halt an <u>impending</u> foreclosure proceeding." Price v. PennyMac Loan Serv., LLC, No. CV 1:18-00951, 2018 WL 4291741, at *4 (S.D.W. Va. Sept. 6, 2018) (emphasis in original) (citing cases).  In cases involving impending foreclosures, Price v. PennyMac Loan Service, LLC recognized the following test: "if the plaintiff is not obligated on the loan, and therefore foreclosure provides the only remedy for a defendant, the value of the home is the amount in controversy."  No. CV 1:18-00951, 2018 WL 4291741, at *4 (S.D.W. Va. Sept. 6, 2018).

---

C.F.R. § 203.357), pre-foreclosure sales (§ 203.370), partial claims that defer repayment of the mortgage principal through a subordinate interest-free mortgage (§§ 203.414), assumptions that transfer the mortgage obligation to a credit-worthy owner-occupant (§ 203.512), special forbearances that allow mortgagors to make reduced or suspended payments where a default occurs due to circumstances beyond the mortgagor's control (§§ 203.471 and 203.614), and recasting or modifying the total unpaid amount due on the mortgage based on a new amortization schedule (§ 203.616).  See 24 C.F.R. § 203.501; Compl. ¶¶ 7(a), 59–61; Pl.'s Reply 3 (citing U.S. Dep't of Hous. & Urban Dev., FHA Single Family Housing Policy Handbook 4000.1 (2019)).

In Price, where the plaintiff remained obligated on the loan, it was noted that "foreclosure is not the only method of recourse by which the outstanding loan balance could be recovered," and concluded that "requiring PennyMac to engage in loss mitigation does not implicate the value of the [home]." Id. at *5; see also Lee v. Citimortgage, Inc., 739 F. Supp. 2d 940, 946–47 (E.D. Va. 2010) (holding that plaintiff's requested relief of having, or attempting to have, "a face-to-face meeting with him prior to commencing foreclosure" is too speculative to satisfy the amount in controversy requirement).  Inasmuch as plaintiff remains obligated on the loan and enjoining foreclosure is not the only means of satisfying plaintiff's request for specific performance, defendant cannot meet the amount in controversy requirement based on the balance owed on the loan.

The notice of removal also alleges that on top of the damage components of the specific performance and declaratory judgment requests, the requests for statutory damages, actual damages, punitive damages, and attorney fees all "further serve to, beyond any doubt, satisfy the amount in controversy" requirement.  See Not. Removal ¶ 13.

First, when evaluating whether requests for statutory penalties satisfy the amount in controversy requirement, courts estimate the maximum statutory penalties recoverable based on

the face of the complaint.  See Bourne v. Mapother & Mapother,
P.S.C., 998 F. Supp. 2d 495, 500 n.1 (S.D.W. Va. 2014).  The
maximum civil penalty allowed by the WVCCPA is $1,000 per
violation, and this award may be adjusted to account for
inflation since September 1, 2015 based on the consumer price
index published by the Department of Labor.  See W. Va. Code
Ann. §§ 46A-5-101, 46A-5-106.  Although "[a] separate penalty
may be imposed for each WVCCPA violation," see Bourne, 998 F.
Supp. 2d at 500, the exact number of statutory violations
alleged in the complaint remains undetermined.  The complaint
does not clearly state the number of violations alleged and
defendant does not attempt to estimate the number.

        By plaintiff's estimation, the complaint alleges six
violations corresponding to the six dates where the defendant
illegally charged inspection fees.  Pl.'s Mem. 10.  A review of
the complaint indicates that the alleged statutory violations
also potentially include eight other instances of defendant
(1) "informing Plaintiff that foreclosure efforts will continue
until a loss mitigation is approved and executed,"
(2) "instructing Plaintiff that it would not accept a payment
for less than the full amount due," (3) "instructing Plaintiff
not to make a payment and refusing her payments," (4) "closing
its review of Plaintiff's application for assistance without

reviewing the documents she submitted or notifying her that additional information was needed," (5) "initiating foreclosure prior to completing its review of Plaintiff's application for assistance," (6) "failing to properly consider Plaintiff for loss mitigation," (7) "otherwise failing to service the loan consistent with commercially reasonable business practices," and (8) representing "that Plaintiff's obligation may be increased by fees and charges, including property inspection fees, when such fees and charges were not authorized by agreement or law." Compl. ¶¶ 52, 54, 56.

Without defendant providing further evidence or argument to the contrary, the court finds that the complaint includes 14 alleged statutory violations.  By the court's calculation based on the Bureau of Labor Statistics website, $1,000 as of September 2015 has the same buying power as $1,080.96 in November 2019.[4]  Assuming the maximum recoverable for each penalty is $1,080.96, statutory penalties would amount to approximately $15,133.44.

---

[4] CPI Inflation Calculator, Bureau of Labor Statistics, U.S. Dep't of Labor, http://www.bls.gov/data/inflation_calculator.htm (last visited Dec. 11, 2019); see also Justice v. Branch Banking & Tr. Co., No. 2:16-CV-03272, 2017 WL 55870, at *3 n.1 (S.D.W. Va. Jan. 4, 2017).

Beyond that figure, it would, on this record, be pure speculation to estimate the amount plaintiff could potentially recover in actual or punitive damages. The complaint does not specify any tangible number relating to any of these damages and defendant does not give any indication as to how the court should value them. Accordingly, the court does not attribute any value to them at this stage when doing so would be based on conjecture alone. See Price, 2018 WL 4291741, at *5.

Finally, the notice of removal cites Francis v. Allstate Ins. Co., 709 F.3d 362 (4th Cir. 2013) for the proposition that "potential attorney's fees should be considered in the amount-in-controversy determination." Not. Removal 4 n.3 (quoting 709 F.3d at 368). Although the WVCCPA allows for attorney fees, see W. Va. Code Ann. § 46A-5-104, their amount also remains purely speculative when defendant does not provide any evidence or support as to their value. See Bartnikowski v. NVR, Inc., 307 F. App'x 730, 736 n.12 (4th Cir. 2009) ("At this stage of litigation, however, an estimate of attorneys' fees is pure speculation, and thus, on this record, cannot be used to augment the amount-in-controversy calculation.").

Consequently, the requests for actual damages, punitive damages, and attorney fees are all too speculative to meet the jurisdictional requirement. Beyond a cursory reference

in the notice of removal that these requested damages would
supplement the value of plaintiff's equitable relief (and the
statutory damages of some $15,000), defendant does not begin to
support its allegations.  Without defendant furnishing any
supporting evidence, the court has no basis, other than
conjecture, to conclude based on the pleadings that all of these
requests combined would exceed $75,000.  Because the court also
finds that the award of specific performance alone may be little
more than the $2,769.85 that plaintiff sent to defendant on
April 18, 2019, only to see defendant return it as "not enough,"
defendant has not demonstrated that the amount in controversy
exceeds $75,000.

### IV.   Award of Attorney Fees

Plaintiff also argues that it is entitled to
reasonable attorney fees and costs incurred as a result of the
removal pursuant to 28 U.S.C. § 1447(c).  Pl.'s Mem. 11.  The
statute provides that a court remanding a case may "require
payment of just costs and any actual expenses, including
attorney fees, incurred as a result of the removal."  28 U.S.C.
§ 1447(c).  "[A]n award of fees under § 1447(c) is left to the
district court's discretion, with no heavy congressional thumb
on either side of the scales."  Martin v. Franklin Capital
Corp., 546 U.S. 132, 139 (2005).  "The appropriate test for

awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Id. at 140.  Ultimately, reasonableness is the standard by which the request must be evaluated.  Id.  "Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Id. (citations omitted).

Although defendant did not meet its burden establishing by a preponderance of the evidence that the amount in controversy in this matter exceeds $75,000, the parties have diverse citizenship and the amount in controversy was ambiguous based on the complaint.  There is also no indication that defendant removed the case to prolong litigation and increase costs.  Having found that defendant had an objectively reasonable basis for removal that warranted development, analysis, and resolution of the removal issues in this case, the court declines to award plaintiff its costs and fees in bringing this motion.

V.    Conclusion

For the foregoing reasons, the court concludes that it lacks subject matter jurisdiction.  Accordingly, it is ORDERED that plaintiff's motion to remand be, and it hereby is, granted. It is further ORDERED that this matter be, and it hereby is, remanded for all further proceedings to the Circuit Court of Kanawha County.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties, and further directed to forward a certified copy of this order to the clerk of court for the Circuit Court of Kanawha County.

ENTER: July 13, 2020

John T. Copenhaver, Jr.
Senior United States District Judge